WILLIAM T. FORBES, Judge of Probate, *vs.* SUSAN P. ALLEN, executrix, & others.

Worcester.    October 1, 1895. — October 21, 1896.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & BARKER, JJ.

*Breach of Condition of Executor's Bond — Payment of Legacy by a Conveyance in Trust — Sureties chargeable with Simple, not Compound Interest — Accounting of Sureties with Estate — Disposition of Payments made by Executor.*

If a legatee under a will many years before the executor's death makes an arrangement, which is in effect a settlement of all his demands against the estate for the legacy, and against the executor as executor, and acquiesces in the arrangement until after the executor's death, he cannot hold the sureties on the executor's bond responsible as though the arrangement had not been made.

In an action for the breach of an executor's bond, the sureties are not chargeable with compound interest, if the case is not one of gross delinquency.

In an action against the sureties on an executor's bond, for a breach thereof, the court said that, while in many instances the fact that there must be new administration after the death of an original executor is not at all connected with the fault of the executor, and in such cases it would plainly be unjust to say that

the delivery of the assets of the original estate to the administrator *de bonis non* with the will annexed by the personal representative of the original executor was not a satisfactory accounting within the meaning of the statute, yet that in the case in question it was just and equitable that the defendants should be held answerable for such a sum as, with the net balance in the hands of the administrator, would make up the full amount of the legacy with the balance of unpaid interest properly computed; and that if the sum in the hands of the administrator was a net sum after the payment of his charges and expenses, it was all to be credited in ascertaining the amount for which execution was to issue, but if there were yet charges and expenses of the new administration, only the net balance after their deduction was to be credited.

Payments having been made by the executor in every year to a *cestui que trust*, who was entitled to the income of the trust fund from the time of the testator's death, none of which payments were applied specifically either by the executor or by the *cestui que trust*, the court said, in an action for a breach of the executor's bond, that it was equitable and just that under the circumstances some portion of those payments should be applied to the interest upon the trust fund, and directed the method of application.

CONTRACT, under the provisions of Pub. Sts. c. 143, § 13, against Susan P. Allen, executrix of the will of Herbert F. Allen, and George K. Nichols and H. Catherine Allen, sureties upon a probate bond given by said Herbert F. Allen, executor of the will of Luke F. Allen. The executor had deceased, and the action was defended by the sureties. The case was reserved for the full court by *Field*, C. J., upon the pleadings and a report, which was to be treated as a master's report, such judgment and award of execution to be entered as justice might require. The facts appear in the opinion.

*J. B. Scott*, for the plaintiff.

*F. P. Goulding & B. W. Potter*, for the defendants.

BARKER, J. Some objections to the admission of evidence are stated in the report, but have not been argued by the objecting party.

On March 20, 1883, Herbert F. Allen, the principal obligor, was appointed executor of the will of his deceased father, Luke F. Allen, who died on February 11, 1883, leaving a widow and two sons, Herbert F. Allen and William J. Allen. The will gave legacies to the widow and to Herbert F. Allen, and the residue of the estate to the two sons, in equal shares, providing that ten thousand dollars of the share of William J. Allen should be held in trust, and appointing Henry F. Wing and Herbert F. Allen trustees of that trust, neither of whom gave bond as trustee or was appointed by the Probate Court.

As executor, the principal obligor came into possession of securities and money belonging to the estate to an amount of more than fifty thousand dollars, and also of his own unpaid notes to a large amount. He filed no inventory and rendered no account, and, although there were sufficient funds, he paid the widow but a part of her legacy, and did not set apart the trust fund of ten thousand dollars. He died, testate, on April 23, 1893, and the executrix of his will was, on July 5, 1893, ordered to render and file his account as executor, but no such account has been filed. There have been substantial breaches of duty on the part of the executor, and breaches of the bond in suit, and judgment must be entered for the plaintiff for the penal sum of the bond. Pub. Sts. c. 171, § 9.

After the death of the original executor, administration of the estate of Luke F. Allen not already administered was granted, on June 6, 1893, to Andrew J. Hall and Joseph A. Dodge, and they have in hand as assets of the estate the sum of $5,352.50, after having paid the widow of Luke F. Allen the balance of her legacy unpaid by the original executor; and the report finds that this sum is available to be applied in reduction of the amount of the estate not satisfactorily accounted for by the original executor.

On June 13, 1893, Henry F. Wing declined to be trustee of the ten thousand dollar trust, and on June 20, 1893, John B. Scott was appointed trustee of that trust.

It is not contended that the debts of Luke F. Allen, his funeral expenses, or the charges of the administration of his estate have not been paid. The only persons entitled to claim under his will as devisees or legatees were his widow, who was one of the sureties on the bond in suit and is one of the defendants, and his two sons, Herbert F. Allen and William J. Allen. The legacies to the widow and to Herbert F. Allen have been now fully paid, and the only right in equity to execution upon the judgment to be entered in this suit is in respect of the bequests given by the will to or for the benefit of William J. Allen. When the suit was commenced, it seems to have been thought that his trustee or trustees might be entitled to execution in their own names. But at the argument it was conceded that the execution should be issued generally, in the name of the

plaintiff, for the value of all the estate of the testator which came to the hands of the original executor, and which upon the report is not satisfactorily accounted for, and for interest. See Pub. Sts. c. 143, § 20, cls. 3 and 4.

The excess of the bequest to William J. Allen over the ten thousand dollars to be put in trust amounted to $20,462.75. Up to the death of the executor on April 23, 1893, he had paid William J. Allen sums aggregating $22,954.49, some of the payments being made in each year. It does not appear that any specific application of any of these payments was made either by the executor or by William J. Allen. In the year 1883, the latter asked the executor to settle the estate, and continued his requests until 1886, when, upon a request for a final settlement, the executor refused to settle, and he refused again in 1887. William J. Allen had no property except from the estate, and his expenses and those of his family were defrayed from the payments made by the executor to him. To protect himself from being cheated by third persons, on June 5, 1886, he gave to his brother, the executor, a deed and a bill of sale of all his interest in the estate, except in the trust fund, the brother giving back a declaration of trust, stipulating that he should render as often as once in each year an account of his receipts and expenses and charges, and should pay the net earnings or income as often as once in three months to William J. Allen, or to his wife, at the will of Herbert F., and should reconvey or reassign to William J. or to his wife as Herbert F. should elect.

The report finds that after this deed and bill of sale William J. Allen as legatee had no further right to hold the executor save in respect of the trust fund of ten thousand dollars, and that the defendants are not answerable for the portion of the general legacy conveyed to the executor, nor for any failure of the latter to administer or pay over the trust created by the instruments of June 5, 1886.

It is contended by the plaintiff that this finding is wrong, and that the liability of the executor in respect of that portion of his brother's legacy not put in trust by the will continued, notwithstanding the transaction of June 5, 1886, and that the present defendants, as sureties, should now make good any deficiency therein, as well as in the ten thousand dollar fund.

But upon the report the transaction of June 5, 1886, appears to have been voluntarily and understandingly made, for the purpose of protecting the legatee from being defrauded by third persons.  The words of the deed and bill of sale are apt to transfer the title of William J. Allen to his brother, and to substitute an obligation to deal with the property under the voluntary trust for that of accounting for it as executor, and we see no reason for disturbing the finding of the report in this respect.  Having many years before the executor's death made this arrangement, which was in effect a settlement, adjustment, and liquidation of all his demands against the estate and against the executor as executor, except the ten thousand dollar trust fund, and having acquiesced in the arrangement until after the death of the executor, equity does not permit him now to hold the sureties responsible as though the arrangement had not been made.  They are not responsible for the disposition of property which Herbert F. Allen thereafter held in another capacity than that of executor.  See *McKim* v. *Harwood*, 129 Mass. 75.

The report finds that Herbert F. Allen had the use and benefit of the estate, and should stand charged with interest at the rate of six per cent per annum upon the ten thousand dollars of the trust fund from February 11, 1884, to the date of the finding; and that execution should issue for the amount so found, deducting the amount in the hands of the administrators *de bonis non*, which is to be set off against the deficit.  The sum so to be set off is found to be $5,352.50.

The plaintiff contends that, in view of the fact that the executor had the use of the estate, and of the requests made to him for a settlement, interest should be computed with annual rests.

The defendants contend that, as the payments actually made by the executor during his life to William J. Allen exceed the whole amount of interest upon the whole bequest to him reckoned at the legal rate, it should be held that the interest on the ten thousand dollar trust has been paid to March 11, 1894, and that interest on that fund should be charged only from that date.

The executor was not directed by the will to hold the ten thousand dollar trust fund as executor, but it was to be held by himself and another as trustees.  While his neglect to establish

the trust and to pay over the fund to the trustees, with the facts that there was adequate property available and that he had the use and benefit of the estate in his hands, might by themselves, or under other circumstances than those -stated, have justified a finding that the defendants should be charged with compound interest upon the amount of the trust fund, they did not, when taken with all the circumstances stated in the report, require such a finding. See *Wyman* v. *Hubbard,* 13 Mass. 232; *Fay* v. *Howe,* 1 Pick. 527; *Stearns* v. *Brown,* 1 Pick. 530; *Lamb* v. *Lamb,* 11 Pick. 371; *Boynton* v. *Dyer,* 18 Pick. 1; *Kent* v. *Dunham,* 106 Mass. 586; *Eliott* v. *Sparrell,* 114 Mass. 404; *Welch* v. *Adams,* 152 Mass. 74, 86. Considering that payments were made by the executor to his brother in every year, and that in many of the years the payments exceeded the amount of interest upon the whole amount bequeathed in trust and otherwise to William J. Allen, and the fact that the latter for his own purposes voluntarily constituted the executor trustee of all the property coming to William J. from his father's estate except the trust fund, and acquiesced in the executor's management of the estate for six years from the year 1887, and that he never instituted proceedings during the life of the executor, the case is not one of such gross delinquency as to have required a finding that the defendants should be charged with compound interest.

In ascertaining the sum for which execution is to issue, some deduction should be made on account of the property now in the hands of the administrators *de bonis non.* The report shows that the property now under administration by them comes from assets of Luke F. Allen's estate turned over to them by the executrix of the will of his original executor. By placing it in the hands of the administrators *de bonis non,* the executrix of the original executor in a sense satisfactorily accounted in his behalf for the property so dealt with. But it is clear that only so much of the $5,352.50 now in the hands of the administrators *de bonis non* as shall remain after deducting the charges and expenses of the new administration can in fact go to make up the ten thousand dollar trust fund. If the original executor had performed his duty of setting apart that fund, the whole sum given by the testator in trust would have been placed in the fund, the estate

having been ample to pay all legacies and the charges of administration.    While in many instances the fact that there must be new administration after the death of an original executor is not at all connected with the fault of the executor, and in such cases it would plainly be unjust to say that the delivery of the assets of the original estate to the new administrators by the personal representative of the original executor was not a satisfactory accounting within the meaning of the statute, we think that in the present case it is just and equitable that the defendants should be held answerable for such a sum as, with the net balance in the hands of the administrators *de bonis non*, will make up the full principal of the ten thousand dollar trust, with the balance of unpaid interest properly computed.    Under the circumstances of the present case, the necessity for the new administration comes from the default of the original executor rather than from his death.    If, then, the sum of $5,352.50 now in the hands of the administrators *de bonis non* is a net sum after the payment of their charges and expenses, it is all to be credited in ascertaining the amount for which execution is to issue; but if there are yet charges and expenses of the new administration, only the net balance after their deduction is to be so credited.

The result of our consideration of the case is, that neither the method followed in the report nor that contended for by the defendants is to be used in ascertaining the amount for which the execution shall issue.

The testator died on February 11, 1883, and we think that William J. Allen was entitled to the income of the ten thousand dollar trust from the time of the testator's death.    See Pub. Sts. c. 136, § 24; *Pollock* v. *Learned*, 102 Mass. 49; *Sargent* v. *Sargent*, 103 Mass. 297; *Ayer* v. *Ayer*, 128 Mass. 575; *Cushing* v. *Burrell*, 137 Mass. 21; *Keith* v. *Copeland*, 138 Mass. 303.    Payments were made to him by the executor in every year, and while none of them were applied specifically, either by the executor or by William J. Allen, we think it is clearly equitable and just that under the circumstances some portion of those payments should be applied to the interest upon the trust fund.

The testator having died on February 11, 1883, and letters testamentary having been granted on March 11, 1883, and the funds of the estate having been used by the executor, it is fair

to assume that the general legacy to William J. Allen drew interest from March 11, 1884, and the trust legacy from February 11, 1883.

During the year ending March 11, 1884, the executor made to William J. Allen cash payments aggregating $3,400. According to the revised report, the whole amount due from the executor in respect both of the general legacy and the trust legacy was $30,462.75, of which $20,462.75 was the amount of the general legacy, which drew no interest before March 11, 1884. We think that, in the absence of any application by the parties of the $3,400 paid by the executor during the year ending March 11, 1884, it is just and equitable to apply as of March 11, 1884, the sum of $650 to the extinguishment of the interest for one year and one month from the testator's death on the ten thousand dollar trust, and $2,750 the rest of the $3,400 upon the principal of the general legacy, reducing the same as of March 11, 1884, to $17,712.75. Both this and the trust legacy would draw interest for the year ending March 11, 1885. The amount paid by the executor during this year was $3,063, and it is equitable to apply $600 of this to the year's interest upon the trust fund, and the balance to the interest and principal of the general legacy. This done, the general legacy stands at $16,312.52 on March 11, 1885. During the year ending March 11, 1886, there were payments of $700, in bank stock, and of $3,241.16 in cash. It is fair to apply the bank stock as a payment upon the principal of the general legacy; and the cash payment of $3,241.16, applied first to the extinguishment of the interest of the year upon both the general legacy and the trust, and the balance upon the principal of the general legacy, leaves the latter as $14,650.11, as of March 11, 1886.

As the transaction of June 5, 1886, by which the general legacy was put into a voluntary trust, of which the same person who was executor was also the trustee, was near in time to March 11, 1886, we consider it equitable to assume that, both legacies being in his hands as trustee during the rest of the executor's life, his payments to his brother during each year, beginning with March 11, 1886, should be considered first as payments of interest upon the respective trusts; that in the years when the whole payment exceeded the whole interest, the

excess should be applied upon the principal of the voluntary trust, which the trustee might pay to the *cestui* as and when he chose; and that in the years when the whole payment did not equal the interest upon both funds, it is just to apportion the amount paid in proportion to the respective amounts of the two trusts, and thus to ascertain what in equity should be considered the amount of the interest now due upon the ten thousand dollar trust, by the rules used in computing simple interest in case of partial payments of interest, and not adding the unpaid balance of the interest of any year to the principal at the end of that year.

Owing to the condition of the report, it is impossible for us to make the necessary calculations. If the parties agree upon the sum for which execution is to issue under the rule now given, it may so issue. But if they do not agree, the report is to be recommitted to Herbert Parker, Esquire, as special master, to ascertain and report for what sum execution shall issue in accordance with this opinion.    *So ordered.*