DUDLEY, Respondent, vs. RICE, imp., Appellant.
DUDLEY, Respondent, vs. KUNTZ, Executor, imp., Appellant.

*May 8—September 29, 1903.*

*Bond of guardian: Invalidity: Enforcement as voluntary obligation:*
*Estoppel: Limitations: Discharge of guardian.*

1. Where the supposed guardian of an insane person, appointed
   in·an adversary proceeding to which the ward did not con-
   sent, gave a bond as required by the statute,·conditioned,
   among other things, to account with the ward when she be-
   came of sound mind and pay over to her what was then found
   to be due, and was thereby enabled to retain possession of the
   ward's property and receive ·the income thereof against her
   consent, the bond, though void as a guardian's bond because
   the appointment was without jurisdiction, may be enforced
   as a voluntary obligation in respect to the condition men-
   tioned.
2. In such a case the special limitation provided in sec. 3968, Stats.
   1898, as to actions upon guardians' bonds, entered into and
   formed a part of the contract, so far as the sureties were con-
   cerned; and an action against them upon the bond is barred
   if not commenced within four years after the discharge of the
   guardian by reversal, on the ground of lack of jurisdiction, of
   the order appointing him.

APPEAL from a judgment of the circuit court for Milwau-
kee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an action against the principal and sureties upon
a bond given in guardianship proceedings. One of the sure-
ties, John Mitchell, having died after judgment in the circuit
court, the defendant *Kuntz,* as·executor of his last will and
testament, has been substituted in his place as defendant.

The action was referred to John F. Harper as referee, who,
after hearing the evidence, made findings to the effect that
James Douglas was appointed guardian of the person and es-
tate of the plaintiff, *Marion V. Dudley,* alleged to be insane,
by order of the county court of Milwaukee county, March 15,
1892; that on March 19th following Douglas, Mitchell, and
*Rice* as sureties executed and delivered a guardianship bond

as required by the statute to complete the qualifications of Douglas as guardian, which was duly approved and filed by the court, the conditions of which bond were as follows:

"The condition of the above obligation is such that whereas, the above-named principal obligor has this day been appointed guardian of the above-named obligee, *Marion V. Dudley,* now, therefore, if the said James Douglas shall make a true inventory of all the estate, real and personal, of his said ward, that shall come to his possession or knowledge, and return the same into the county court of the proper county within such time as the judge shall order, and shall dispose of and manage all such estate according to law and for the best interests of the ward, and faithfully discharge his trust in relation thereto, and also when required in relation to the care, custody and support of the ward, and shall render an account on oath of the property, estate and moneys of the ward in his hands and all proceeds or interest derived therefrom, and of the management and disposition of the same, within one year after such appointment as guardian, and annually thereafter and at such other times as the proper court shall direct; and shall at the expiration of such trust settle all accounts with the county court or with the court having jurisdiction of probate matters in the proper county, *or with the ward if she be of sound mind,* or with her legal representatives, and pay over and deliver all moneys, estate and effects remaining in his hands or due on such settlement, to the person or persons lawfully entitled thereto, then this obligation to be void, otherwise of full force, virtue and effect."

The referee further found that, at the time of his appointment, Douglas had in his hands, as agent of the plaintiff, her entire separate estate, consisting of moneys and securities, amounting in all to the sum of $20,520.58, which remained in his hands after his appointment, and that Douglas received thereafter, and prior to May 10, 1896, as income from said estate, the sum of $4,318.82, making in all $24,839.40; that on October 22, 1894, upon proceedings duly had in the circuit court for Milwaukee county, that court adjudged that the guardianship proceedings were without jurisdiction, and

reversed the order appointing Douglas guardian; that prior to the said last-named date Douglas, as guardian, laid out and expended in good faith, for the benefit of his supposed ward, and without knowledge of the invalidity of his appointment, the sum of $7,567.39, leaving $17,272.01 due from him to the plaintiff, October 22, 1894; that Douglas returned to the plaintiff, May 12, 1895, credits aggregating $12,715, and that thereafter the said sureties paid certain judgments against *Mrs. Dudley* upon which creditors' actions had been commenced against them, and that after deducting all proper credits the amount due from Douglas to *Mrs. Dudley,* with interest to the date of the report, was $4,915.17; that the services of Douglas as guardian were reasonably worth $1,500, but that they could not be allowed because of the invalidity of the guardianship proceedings; that Douglas was discharged as guardian by the order of October 22, 1894; that this action was barred as to the sureties by sec. 3968, Stats. 1898, because not brought within four years from the discharge of the guardian; that the action should be dismissed as against the sureties, but that plaintiff was entitled to judgment against Douglas for $4,915.17 and costs.

Upon a review of the referee's report the circuit court confirmed the same in all respects, except as to the operation of the statute of limitations, and reversed the conclusion of the referee on this subject, and ordered judgment against the sureties as well as against the principal for the sum due from Douglas. From judgment entered in accordance with this conclusion, the sureties separately appeal.

*S. A. Connell,* for the appellant *Rice.*

For the appellant *Kuntz,* as executor of the estate of John Mitchell, there was a brief by *Ryan, Merton & Newbury,* and oral argument by *E. Merton.*

For the respondent there was a brief by *Sylvester, Scheiber & Orth,* and oral argument by *C. A. Orth.*

The following opinion was filed July 3, 1903:

Winslow, J.    The appellant sureties contended in the trial court and in this court that the bond in question, having been given in compliance with the requirement of a court which had no jurisdiction in the matter, is void for all purposes; and that even if this be held otherwise, and the bond in suit can be held binding as a voluntary obligation at common law, still the action is barred by the four-year limitation as to actions upon guardians' bonds prescribed by sec. 3968, Stats. 1898.    On the other hand, the respondent claims that, while the bond is void as a statutory bond, it is still enforceable as a voluntary bond, and that sec. 3968, *supra,* has no application to it.

The general principle is that a bond not required by statute is binding at common law if given voluntarily for a valid consideration, if it be not repugnant to the letter or policy of the law.    1 Brandt, Suretyship & G. (2d ed.) § 22; *U. S. v. Tingey,* 5 Pet. 115; *U. S. v. Bradley,* 10 Pet. 343.    It has also been frequently held that where a bond is required by statute, and one be given voluntarily for a valid consideration running to the wrong obligee, or containing provisions not required by the statute, it may still be enforced as a common-law obligation, if not repugnant to the letter or policy of the law.    *Lewis v. Stout,* 22 Wis. 234; *Platteville v. Hooper,* 63 Wis. 381, 23 N. W. 583; *Straw v. Kromer,* 114 Wis. 91, 89 N. W. 821; *Manitowoc v. Truman,* 91 Wis. 1, 64 N. W. 307. On the other hand, it has also been held that, where the execution of a bond has been unlawfully exacted by a court or officer, it is void for all purposes and cannot be enforced because given *in invitum* and not supported by any consideration.    This principle has been applied to a bond given by a defendant to dissolve an attachment, where no attachment could lawfully be levied (*Bank v. Mixter,* 124 U. S. 721, 8 Sup. Ct. 718); to a guardian's bond required of a father

when the father was entitled to act as guardian without bond
(*Aucoin v. Guillot,* 10 La. Ann. 124); and to a bond re-
quired of the warden of a penitentiary when the law required
no bond (*State v. Heisey,* 56 Iowa, 404, 9 N. W. 327). In
these cases it seems plain that there was absolutely no consid-
eration for the bond, because the principal was by law en-
titled to every right which he claimed without bond, and
hence in law secured nothing by reason of the giving of the
bond.

There is also a line of cases of somewhat different char-
acter, which hold, in effect, that where an official bond is re-
quired by a court, and it appears that there was never any
legal appointment of the principal to the office by reason of
lack of power in the court to make the appointment, the bond
is wholly void, and will not be enforced, even as a voluntary
obligation.   *Conant v. Newton,* 126 Mass. 105; *Thomas v.
Burrus,* 23 Miss. 550; *Crum v. Wilson,* 61 Miss. 233; *Jus-
tices v. Selman,* 6 Ga. 432.   In the first of the cases last
cited a probate court required a bond as trustee of one who
was not a trustee, but simply an agent in charge of the prop-
erty of another by reason of an oral request, and it was held
that, as the court only had power to require bonds of trustees
under wills or written instruments, the court had no jurisdic-
tion over the parties or subject matter.   Hence the bond was
not a valid probate bond, and not enforceable as a voluntary
bond against the sureties, because such a holding would
change the nature of the contract which the sureties intended
to assume.   The other cases cited were cases where guardians
were appointed by probate courts having no jurisdiction to
make the appointments at the time they were made.

It is strongly urged that the principle of these cases should
govern the case at bar.   But here we meet the case of *Hazel-
ton v. Douglas,* 97 Wis. 214, 72 N. W. 637, which was a cred-
itors' action brought against the principal and sureties upon
this same bond, and in which this court held on demurrer

that the bond was binding as a voluntary obligation; the only essential difference being that in that case the complaint alleged that the entire property was received by Douglas as guardian by virtue of having given the bond, whereas it appears by the findings in the present case that Douglas had the principal of the estate as agent of the plaintiff at the time of his appointment, and only received the income of the estate, amounting to $4,318.82, during the time he was supposed to be guardian and by virtue of having given the bond. This case is not *res adjudicata* here, because the parties plaintiff are not the same, nevertheless it should not be overruled unless it is plainly wrong, for certainty in legal rules is sometimes a greater desideratum than precision in logic. Upon reconsideration of that case, it must, we think, be admitted (and the admission comes with better grace because the opinion was written by the writer of this opinion) that it is hardly satisfactory, because it relies upon cases coming within the first two classes referred to in this opinion, and does not discuss the line of cases of which *Conant v. Newton,* 126 Mass. 105, is a conspicuous example. Reference to the printed briefs in *Hazelton v. Douglas* shows that these cases were not called to the attention of the court in that case, nor was the argument made. This consideration, however, is only important as explaining the fact that no reference is made to the proposition in the opinion, and cannot bear upon the question of the correctness of the decision. Notwithstanding, however, the meagerness of the opinion, we are not satisfied that the case was wrongly decided.

While not disposed to question the soundness of the proposition laid down in the *Conant Case* as a general proposition, we think the case distinguishable from the case at bar in at least two material particulars. In that case the appointment of the supposed trustee was made upon petition of the beneficiary, who was *sui juris,* and hence the property went into the hands of the principal in the bond with the full consent

of the beneficiary, and, what is more important, the bond is conditioned only to settle his accounts with the court at the expiration of his trust, and pay over the sum found *due on such settlement* to the person entitled thereto. In the present case Douglas was appointed guardian of *Mrs. Dudley* as the result of an adversary proceeding to which she did not consent, and he thereafter held the property and received the income therefrom against her consent, and was enabled to do so by reason of the bond; and the bond provides for the settlement of the guardian's accounts at the expiration of the trust, *either* with the county court *or with the ward,* if she be of sound mind, and that he pay over the amount found due in such settlement. This promise to account with the ward is not found in the Massachusetts bond, either in direct terms or by implication, and its presence in the bond in suit marks a very substantial difference in the two cases. The court in that case could well say that the only agreement was to account in the probate court, and when it appeared that the probate court had no jurisdiction to receive or pass upon such account there could be no liability; but could that be said in the case of an express agreement to account with the ward herself at the expiration of the trust? We think not.

In the present case the supposed guardian retained possession of the property and collected its income for a long period, against the will of the owner, and by reason of the fact that he had given a bond conditioned, among other things, to account with the owner when she became of sound mind and pay over to her what was then found to be due. These facts seem to us to present a persuasive case of estoppel, both as to principal and sureties. The sureties were under no obligation to sign the bond. By doing so, they enabled Douglas to retain and collect the income of the plaintiff's estate under the promise that he would account with her and pay it back to her when she became of sound mind, and we think that they ought not now to be heard to urge lack of jurisdiction in

the court as a means of escaping from this definite agreement. We therefore hold that the bond may be enforced as a voluntary obligation to the extent indicated.

This brings us to the last question in the case, which is not without difficulty. Our statute provides a special limitation with regard to actions on guardians' bonds. Sec. 3968, Stats. 1898, provides as follows: "No action shall be maintained against the sureties on any bond given by a guardian unless it be commenced within four years from the time when the guardian shall have been discharged." The appellants maintain that this provision is controlling in this case, and that this action is barred thereby, because it was not commenced within four years from the date of the judgment reversing the order of appointment. There can be no doubt of the proposition that the guardian was in legal effect discharged when the guardianship proceedings were reversed and held void. *Paine v. Jones,* 93 Wis. 70, 67 N. W. 31.

To this proposition the respondent replies that the bond in suit is not a guardian's bond, and at first blush the reply seems almost conclusive; but a little reflection shows serious difficulty in turning the question off in that summary manner. True, the bond is supported and enforced, if enforced at all, as a voluntary obligation, but when so enforced no new conditions or obligations can be added to it, nor can any be subtracted. The agreements which the parties made must be enforced. Calling it a voluntary bond cannot enlarge its scope. Now, if the provision that no suit could be maintained upon it after four years had been written in the bond, none would contend that it could be enforced after that time, although it failed as a statutory bond for lack of jurisdiction of the court, and was only enforceable as a voluntary bond. Such was the agreement of the parties. They made, or intended to make, a special contract with special liabilities, and those special liabilities were the liabilities provided by the statute, with their accompanying limitation. The argument

is convincing that this special limitation entered into and formed a part of the contract so far as the sureties are concerned. Such was the holding in reference to this very section in the case of *Hudson v. Bishop* (C. C.) 35 Fed. 820, where Justice BREWER states the doctrine more logically than I could hope to state it. The idea is that a contract of suretyship supposed by the sureties to have been made under this statute must be held to have incorporated in it the special provision contained in the statute limiting the liability of the sureties on such a contract. The action is barred not because of the statute of limitations operating on a guardian's bond, but because, in contemplation of law, the parties put this limitation in their contract, and it cannot be taken out of the contract, even though it be now discovered that it never was a guardian's bond.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint as to the appellants.

A motion for a rehearing was denied September 29, 1903.