ESTATE OF KALLENBACH: MILLER-OLCOTT LUMBER COMPANY, Claimant and Appellant, vs. ELLSWORTH, Administrator, and others, Respondents.

*April 14—June 3, 1924.*

*Executors and administrators: Claims against estates: Extension of time to file claims: Fraud: Revoking order of extension: Counterclaims on part of estate: Trial: Jurisdiction of county court.*

1. The county court has jurisdiction to set aside an order, procured by fraud, extending the time for filing a claim against an estate. p. 174.
2. Under secs. 3838, 3841, and 4043, Stats., a county court cannot enforce claims of an estate against debtors not filing claims against the estate, but may authorize the administrator to sue the debtor in a court of competent jurisdiction. p. 175.
3. The county court is a court of limited jurisdiction, and may proceed no further than its statutory authority. p. 175.
4. A county court, after vacating its order extending the time for filing a claim against an estate, has no jurisdiction to try a counterclaim of the estate against the claimant. p. 175.

APPEAL from a judgment of the county court of Barron county: A. F. WRIGHT, Judge. *Reversed.*

This is an appeal from a judgment in favor of the respondent and against the appellant for $1,200 and costs.

For the appellant there was a brief by *Fuller & Lampson* of Cumberland, attorneys, and *Bagley, Spohn & Reed,* of counsel, and oral argument by *Frank A. Ross,* all of Madison.

For the respondent administrator the cause was submitted on the brief of *Coe Brothers* of Barron.

CROWNHART, J.    This case was tried before the county court without a jury.    The county court made its findings of fact and they are substantially without dispute.

In substance it appears that Herman Kallenbach entered into a contract with school district No. 18 of the town of Crystal Lake, Barron county, on the 22d day of August, 1919, in which he agreed to build a schoolhouse with outbuildings for said district for the sum of $6,565, payable $1,000 on completion of the foundation; $1,500 upon completion of the brickwork; $1,500 when the building was inclosed, and $2,565 upon completion of the building.    Kallenbach thereupon entered upon the performance of his contract, and had substantially completed the brickwork on the 31st day of October, 1919, when he died.    He had been paid by the school district the sum of $1,300, and the county court found that there was then due him the sum of $1,200. The appellant excepts to this latter finding, and contends that the evidence is conclusive that the brickwork was not yet complete.

Kallenbach furnished the school district with a bond in the sum of $5,000 to guarantee his contract with the district, which bond was signed by one W. G. Miller as surety. After Kallenbach's death Miller entered into an oral agreement with one of the district board to complete said school building for the amount of the unpaid contract price.    Miller thereupon completed the building to the satisfaction of the district and was paid the balance of such contract price.

Kallenbach, prior to his death, had purchased building material for said building from the *Miller-Olcott Lumber Company,* and at the time of his death was indebted to said company for said materials in the sum of $1,446.40.    The lumber company furnished to Miller material and lumber to complete the building and charged the same to the Kallen-

bach account, and Miller turned over to the lumber company the payments from the school district to him and had such payments credited on the Kallenbach account. When the account was balanced after the building was completed, there was a balance due the lumber company of $1,273.

The lumber company failed to file a claim against the estate of Kallenbach until after the period for filing claims had expired. It then caused an affidavit to be filed in the county court, sworn to by Miller, to the effect that it had a claim against the estate which had not fully accrued at the time of the expiration of the date for filing claims, and asked for an extension of time within which to file the claim as provided by statute. The court allowed the petition and thereupon the lumber company filed its claim for $1,273. The administrator of the estate objected to the claim and filed a counterclaim for $1,200, the amount that he claimed was due Kallenbach from the school district after his death, and which sum had been paid to Miller. The county court held that the petition of the lumber company for an extension of time in which to file the claim was false and constituted a fraud upon the court, and thereupon in effect vacated the order and disallowed the claim, but the court retained jurisdiction of the proceeding on the counterclaim and rendered judgment against the lumber company for $1,200 and costs.

At the time of Kallenbach's death and prior thereto Miller was secretary, treasurer, and general manager of the lumber company, and at the time of the filing of the claim he was its president. A great deal of confusion is brought into this case evidently by reason of Miller's failure to distinguish clearly between his individual affairs and the affairs of the corporation of which he was an executive officer. He was the surety on Kallenbach's bond, but in his petition for extension of time he swore that the lumber company was surety on the bond. It is quite reasonable to believe that Miller was not guilty of any criminal intent in this re-

spect. No doubt he went on the bond of Kallenbach for the benefit of the lumber company which was to furnish Kallenbach the material to erect the school building. Miller also swore that the lumber company had the contract to complete the building, which was not true in fact, but which contract was evidently entered into by Miller for the benefit of the lumber company. The lumber company neglected to file a claim for its account against Kallenbach, under Miller's theory that it had the contract to complete the building. The court found that the Miller contract to complete the building was fully performed by May 25th, whereas Miller had sworn that the contract was not completed before July 18th, the last day for filing claims. The finding of the court is sustained by the evidence. As we have seen, on the trial the court came to the conclusion that a legal fraud had been perpetrated upon it by reason of the petition of Miller, and in effect vacated its order permitting the lumber company to file a claim, and therefore disallowed the claim.

This is assigned as error by appellant. The findings of fact are justified by the evidence, and therefore the court was within its jurisdiction to set aside an order procured by fraud. *Estate of Staab*, 166 Wis. 587, 166 N. W. 326, and cases there cited.

The jurisdiction of the county court, provided by sec. 3838, Stats., is to receive and adjust claims of all persons against the estate of the deceased. As provided by sec. 3841, "When a creditor against whom the deceased had claims shall present a claim to the county court the executor or administrator shall exhibit the claims of the deceased in offset to the claims of the creditor, and the court shall ascertain and allow the balance against or in favor of the estate." By sec. 4043 it is provided that "All judgments for costs or for costs and a balance found due an estate against a person presenting a claim against such estate, entered by the county court pursuant to the provisions of law, shall have the same force and effect as judgments in

the circuit court." The county court obtained jurisdiction to enforce claims against debtors to the estate by reason of the statutes referred to, and it would seem clear that unless a debtor to an estate filed a claim against the estate, the county court would have no jurisdiction to proceed against the debtor in that court. It could authorize the administrator to begin an action against the debtor in a court of competent jurisdiction. Sec. 3847, Stats. The county court is a court of limited jurisdiction. It may proceed no further than its statutory authority. *Estate of Anson,* 177 Wis. 441, 188 N. W. 479. Hence, when the county court vacated its order permitting the appellant to file a claim, there was nothing further to litigate in the county court. That proceeding was at an end, and the court has no jurisdiction to proceed to try the case on the counterclaim. For this reason the judgment of the county court must be vacated.

*By the Court.*—The judgment of the county court is reversed and set aside, with costs to the appellant.