ESTATE OF WITTWER: ETTER, Surety, and another, Appellants, vs. CENTRAL WISCONSIN TRUST COMPANY, Trustee, and others, Respondents.

*November 5—December 4, 1934.*

434

436

For the appellant Heggestad there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Dorothy Walker* and *Daniel H. Grady*.

For the appellant Etter there was a brief by *Burmeister & Snodgrass* of Monroe, attorneys, and *Richmond, Jackman, Wilkie & Toebaas* of Madison of counsel, and oral argument by *Oscar T. Toebaas*.

For the respondents there was a brief by *Sanborn, Blake & Aberg* and *Glen H. Bell*, attorneys for Minnie Wittwer; *Bagley, Spohn, Ross & Stevens*, attorneys for Central Wisconsin Trust Company; *Olin & Butler*, attorneys for Hilda Marty, Wilma Freitag, Walter Wittwer, and Huldrich Wittwer; and by *C. G. Mathys*, guardian *ad litem* for Gloria Joyce Wittwer and Charlene Mae Wittwer, all of Madison, and oral argument by *Mr. Bell, Mr. Myron Stevens*, and *Mr. Mathys*.

ROSENBERRY, C. J.   In this case we are not concerned with the disposition made of the assets belonging to the Gottlieb Wittwer estate, except such as are related to the trust fund created in the antenuptial agreement referred to in the will.   With respect to this, it is claimed on behalf of the trustee in bankruptcy that no trust was created by the will; that the county court was without jurisdiction to create such a trust; that therefore none was created; that Etter never became in fact a surety for the trustee because none existed; that the securities deposited with him therefore remained the property of Edward Wittwer under the doctrine declared in *Newcomb v. Ingram*, 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171.

In *Newcomb v. Ingram* no trust was created by the will, nor was there any reference to any instrument which in any way related to a trust.   In that case such trust as there was, was created subsequently by contract among the beneficiaries

named in the will. The facts in that case are in no way analogous to the facts in this case.

While the language in the will is not very apt for the purpose, reading the clause of the will which refers to the antenuptial agreement with the provisions contained in that agreement, the conclusion cannot be escaped that the testator intended that the executor of his will should carry the antenuptial agreement into effect. The antenuptial agreement provides that a trust shall be created to provide for his future wife. The will provides that if provision from the income is insufficient, such portion of the principal shall be set aside for her use as may be necessary. The language of the will is meaningless except when read in connection with the antenuptial agreement, and would make no provision for his widow such as he evidently desired, his desire being evidenced by the antenuptial agreement and his will. It is considered for these reasons that a trust was created by the will in accordance with the provisions of the antenuptial agreement; that in construing the will the county court had jurisdiction to act, and that its judgment and determination in reference thereto is conclusive upon all parties. *State ex rel. Peterson v. Circuit Court,* 177 Wis. 548, 188 N. W. 645; *Wisdom v. Wisdom,* 155 Wis. 434, 145 N. W. 126. See *In re Rausch,* 258 N. Y. 327, 179 N. E. 755.

Having jurisdiction of the estate of Gottlieb Wittwer, the court had jurisdiction to appoint a trustee under the will. The appointment of Edward Wittwer as trustee was therefore a valid appointment. When he accepted such appointment and qualified by giving a bond in accordance with the order of the court appointing him, he became in fact the trustee of an express trust under the will of Gottlieb Wittwer. The trustee in bankruptcy has no interest in the estate of Gottlieb Wittwer. He is concerned only with the property of the bankrupt Edward Wittwer. He has there-

fore no interest in the estate of Gottlieb Wittwer which entitles him to ask to have the final judgment of distribution and assignment in the Gottlieb Wittwer estate set aside. That judgment having been entered many years prior to the bankruptcy, never having been appealed from by any of the parties in interest, is final and conclusive as to the assets of the Gottlieb Wittwer estate.

The proceedings by which the appellant Etter became a surety for Edward Wittwer are attacked on the further ground that the trust fund was never in fact set up and in the hands of Edward Wittwer as such, and that the proceedings had on or about December 29, 1925, were ineffectual for that purpose. This is based upon the holding of this court in the *Estate of Thompson,* 212 Wis. 172, 183, 248 N. W. 167, 171. In that case one Edgerton was executor and trustee, and it was held that—

"if Edgerton was guilty of a breach of trust as executor, Edgerton as trustee did not receive the whole estate, the surety never made good Edgerton's default as executor, and therefore Edgerton has never received the dissipated sums as trustee. . . . If Edgerton as executor did not account for and pay over to himself as trustee the full amount of the estate, then manifestly the trustee could be guilty of no breach of duty with respect to that part of the estate which he did not in fact receive."

It appears from the undisputed facts in this case that when Edward Wittwer was appointed as trustee he issued to himself the check of Edward Wittwer as executor for the sum of $35,000. It further appears that at that time he had in his hands assets belonging to the estate after deducting therefrom the amount which he owed the estate either because of original debts owing to Gottlieb Wittwer or for funds of the estate for which he was liable, an amount largely in excess of $35,000. Furthermore, that the bank

would have honored his check as executor in the amount of $35,000, and did honor it in this way: The check was indorsed by Edward Wittwer as trustee and deposited by him in the bank upon which it was drawn to the credit of his personal account. It does not appear that he at any time opened an account in the bank as trustee. He held his own funds, the funds belonging to the trust estate and to the residuary legatees under the will, in a single account, and, as already indicated in his annual reports to the county court as trustee, merely recited that the trust fund was invested with his own funds. The county court was derelict in its duty in accepting such reports, and of its own motion should have ordered Wittwer to segregate the funds belonging to the trust and to account for them as trustee. When Wittwer thus indicated the transfer from himself as executor to himself as trustee, the transaction was not, as in the *Thompson Case, in vacuo,* so to speak. It did not appear in the *Thompson Case* that Edgerton, as executor at the time he was appointed trustee, had any of the property belonging to the estate of Thompson, and furthermore he thereafter continued to file his accounts not as trustee but as executor. It is considered that, by the transactions had, Edward Wittwer became trustee of the trust created by the will for the benefit of Minnie Wittwer. When he deposited the check, payable to himself as trustee, to his personal account, in the Bank of Monticello, he converted the trust fund to his own use, and he and his bondsmen became liable accordingly.

The securities which Edward Wittwer transferred to the surety, Etter, as indemnity were at the time of their transfer the individual property of Edward Wittwer. They were not in fact the property either of the residuary legatees or of the beneficiaries of the trust. So far as this record discloses Edward Wittwer in fact converted all of the property belonging to the residuary legatees and to himself as trustee

to his personal use. His attempt thereafter to impress the funds in the hands of his surety with the trust was ineffectual. That part of his estate had already passed beyond his control, and he could not deprive the surety of the benefit of the securities by thereafter setting them up on his books and reporting to the court that the securities held by the surety in fact belonged to the trust estate. If and when Etter as surety for Wittwer restores the trust fund and an equity in the securities deposited with Etter by Wittwer exists, the successor trustee will have no interest in those securities because the corpus of the trust will then be intact.

We shall not attempt in this proceeding to determine, because it is not within the issues, to what extent, if at all, the county court has jurisdiction over the securities in the hands of Etter as bondsman. If Etter makes good on his bond, a thing which he has not as yet refused to do, the successor trustee will have no claim upon the securities deposited with Etter. If he does not make good, the issues in respect to the securities so deposited must be determined in another proceeding.

The judgment of the county court went no further than to hold that a trust fund was created under the will of Gottlieb Wittwer; that Edward Wittwer was duly appointed and qualified as trustee; that Edward Wittwer, as trustee, and John T. Etter, as surety, were liable in the sum of $34,000 as of the 1st day of September, 1933; that no fraud is found to have been practiced on the county court of Green county in the probate of the will of Gottlieb Wittwer; that the parties to these proceedings are estopped and precluded from attacking the judgment of the county court in the matter of the will of Gottlieb Wittwer; and that Roy C. Heggestad, as trustee in bankruptcy, was a proper party to the proceeding on the final account of Edward Wittwer, as trustee. The judgment of the county court of Green county

did not attempt to determine any question with respect to the rights of Etter as surety in the securities deposited by Edward Wittwer with Etter to secure him against liability. For the reasons stated, the judgment of the county court of Green county was correct.

*By the Court.*—Judgment affirmed.