ESTATE OF KARKOWSKI, Incompetent: BEUSCHER, Guardian *ad litem,* Appellant, vs. GAUDYNSKI and another, Respondents.

*December 2, 1935—January 7, 1936.*

*J. H. Beuscher* of Milwaukee, guardian *ad litem,* for the appellant.

For the respondent Walter M. Gaudynski there was a brief by *E. J. Mueller,* attorney, and *Harold W. Connell* of counsel, and for the respondent Fidelity & Casualty Company by *Shaw, Muskat & Paulsen,* all of Milwaukee, and oral argument by *Mr. Mueller* and *Mr. Connell.*

FRITZ, J.   The ultimate question on this appeal is whether Walter M. Gaudynski, in settling his account as guardian for

Peter Karkowski, incompetent, is entitled to credit for an investment of $6,000, belonging to his ward, which he made January 30, 1930, in a note secured by a first mortgage on real estate. The guardian *ad litem,* in appealing from an order approving that investment and allowing that credit, contends that the court erred in that conclusion and the findings, upon which it was based, that the real estate in question "had an actual value of at least twelve thousand ($12,000) dollars on January 30, 1930;" and that Gaudynski "acted in good faith and exercised sound discretion and complied with sec. 231.32 of the Wisconsin Statutes, respecting trust fund investments."

Sec. 231.32, Stats., which relates to the investment of trust funds in certain kinds of bonds and securities, provides (so far as here material) :

"(1) (a) Every executor, guardian, or trustee, except where it is otherwise expressly directed by the will or instrument of trust, if any, may invest trust funds in bonds or . . .

"(g) In obligations secured, whether alone, or in combination with other obligations on a parity therewith, by first real-estate mortgages, or trust deeds, on improved farm property or improved urban property (other than public utility or street railway property except as herein provided) in this state and adjoining states, the amount of which mortgages, or trust deeds, does not exceed one half of the actual value of the property covered thereby. . . ."

The provision in that statute, that a fiduciary, except where otherwise expressly directed by the will or instrument of trust, "may invest" trust funds in any of the classes of bonds or securities described in pars. (a) to (i) thereof, may be permissive, in so far as it leaves it optional with him to determine in which of those classes he will invest. However, if he concludes to invest in obligations secured by first real-estate mortgage, then no choice or discretion is left to him as to the extent to which the actual value of the property covered by the mortgage must exceed the value of the obli-

gation secured thereby. In that respect, the statute is not merely permissive. On the contrary, it admits of no deviation or excuse for deviating from the prescribed condition that the amount of the mortgage "does not exceed one half of the actual value of the property covered thereby." In so far as that condition is concerned, such facts as that the fiduciary may have acted in good faith, and exercised sound discretion, do not excuse the investment or render it in compliance with the statute, if, as a matter of fact, the amount of the mortgage obligation exceeds one half of the actual value of the property covered by the mortgage. If the security does not measure up to that requirement, then the investment of trust funds therein is in violation of the statute, and, in making such investment, the fiduciary acts at his own risk and peril and must account for the full amount of the funds invested, regardless of whether he acted in good faith and in the exercise of sound discretion. As we said in *Estate of Fouks,* 213 Wis. 550, 553, 554, 252 N. W. 160:

"Trustees receiving money to invest should be required on final accounting to turn over to the beneficiary the amount of the money received, with its increment, unless they have either secured authority from the court to make a specific investment before making it, or invested the cash in securities such as sec. 231.32, Stats., designates. . . . But to invest in securities other than those prescribed by the statute, at least in absence of express authority from the court administering the trust, is in itself a want of due care as matter of law, and a trustee so careless must respond by turning over to the beneficiary the money he carelessly invested."

See also *Estate of Dreier,* 204 Wis. 221, 235 N. W. 439; *Estate of Allen,* 218 Wis. 349, 259 N. W. 848; *Will of Leonard,* 202 Wis. 117, 230 N. W. 715; *Estate of Allis,* 191 Wis. 23, 209 N. W. 945, 210 N. W. 418. Consequently, the court's findings in respect to good faith and the exercise of sound discretion on the part of Gaudynski afford no basis for the conclusion that the challenged investment complied with the requirements of sec. 231.32 (1) (g), Stats.

There remains then but the question of whether or not that investment of $6,000 exceeded one half of the actual value of the property covered by the mortgage; in other words, whether the actual value of that property was at least $12,000.

There is nothing in sec. 231.32 (1) (g), Stats., because of which the word "actual," as used therein in defining the word "value," should not be "construed and understood according to the common and approved usage of the language" (sec. 370.01 (1), Stats.), and, therefore, held to mean "real, genuine, positive, certain" as opposed to "speculative, potential, possible, virtual, or theoretical." Webster's International Dictionary; Bouvier's Law Dictionary, Rawle's Third Rev. In *Lynch v. Union Trust Co.* 90 C. C. A. 147, 164 Fed. 161, 167, the court, in considering the terms "actual value" and "clear value" in a tax statute, said:

"In using those terms congress must be deemed to have meant something more definite and certain than would be attached to the bald term 'value,' without qualifying adjectives. . . . So that, when congress employed the expressions 'actual value' and 'clear value,' it very evidently intended to convey the idea of definite or certain value—something in no sense speculative."

See also *City of Los Angeles v. Pomeroy,* 124 Cal. 597, 57 Pac. 585, 602; *Tyson Creek R. Co. v. Empire Mill Co.* 31 Idaho, 580, 174 Pac. 1004, 1006; *Maxon v. Gates,* 136 Wis. 270, 289, 290, 116 N. W. 758. With that meaning of the term "actual value" in mind, we find, upon reviewing the record, that the court's finding that the actual value of the mortgaged property was at least $12,000 on January 30, 1930, is clearly contrary to the great weight and clear preponderance of the credible evidence. No useful purpose will be served by a detailed discussion thereof. It suffices to note the following: It was established without dispute that the property consists of a one and a half story house and a garage on a lot which is 30x120 feet, and is located in a

modest residential district, inhabited by industrial workers of moderate means. The house, which has five rooms and a sun porch on the first floor and two bedrooms upstairs, was built in 1909, and remodeled by the mortgagor, Stepke, after 1919, when he purchased the property for $3,700. In 1922, he built the three-car, cement block garage at a cost of $1,580; and in 1923 and 1924, he added a heating plant, water softener, sun porch, electric wiring, etc., and cement walks, at an expense of $1,875. Thus, Stepke's total cost, including improvements, was $7,115. Shortly after the making of the loan in January, 1930, Guadynski was given the sale of the property at a price of $11,500. He was unable to find a purchaser at that price, although he advertised and otherwise endeavored to effect a sale. Within two or three months, he advised Stepke to list the property at $10,500 with another broker; and the latter was unable to sell it at even that reduced price. The tax assessor testified that, for the years 1926 to 1930, the lot was assessed for taxation at $1,200 and the buildings at $2,100, or a total of $3,300, and that those assessments were made at sixty per cent of the true or market value. Another witness who was called on behalf of the incompetent ward, and who had been actively engaged in the real-estate business in the locality in which the property was situated, testified that the actual value in January, 1930, was $1,500 for the lot, $750 for the garage, and $4,500 for the house, making a total of $6,750.

Anthony B. Bonin, who had succeeded Gaudynski as guardian and was called as his witness, had been engaged in the real-estate business in that locality since 1922. He testified that the actual value in January, 1930, was $3,000 for the lot, $6,000 for the house, and $1,500 for the garage, making the total $10,500.

On the other hand, Gaudynski, who testified that he had been in the real-estate business for fifteen years and known values in that locality for thirty years, said that the actual

value in January, 1930, was $3,000 for the lot, $6,000 for the house, and $3,000 for the garage, which made a total of $12,000. However, the exaggerated nature of those valuations is demonstrated by such matters as the following: (1) That Gaudynski admitted that he had been told by Stepke that the total cost of the property to him was $10,700, of which he had paid $3,700 for the house and lot and $7,000 for improvements (although they had actually cost him only $3,415); (2) that Gaudynski valued the garage at $3,000, although he estimated its cost at but $2,500, and at that was $920 higher than the actual cost thereof to Stepke when he built it in 1922; and (3) that Gaudynski had been unable to sell the property at $11,500 when it was listed with him for sale at that price right after he made the loan, and that he had advised Stepke, in April or May, 1930, to list it with another broker for sale at $10,500 and knew that it proved impossible to sell it at even that reduced price.

Two additional witnesses were called on Gaudynski's behalf. They had been engaged in the real-estate business but not in that particular locality. One of them placed the value of the lot at $2,500 and the garage at $2,000. Those amounts were, respectively, $500 and $1,000 lower than Gaudynski's valuation for those items. But that witness valued the house at $7,500, which exceeded by $1,500 even Gaudynski's valuation thereof, and thus made that witness' total valuation also $12,000. The second of those witnesses valued the garage at $1,850. That was $1,150 less than Gaudynski's valuation of $3,000, but that witness, by valuing the house at $7,200 (which was $1,200 in excess of even Gaudynski's valuation), and by likewise valuing the lot at $3,000, brought up his total valuation to $12,500, which was even $50 in excess of Gaudynski's total.

In as much as the actual cost to Stepke for constructing the garage in 1922 was $1,580, and up to January, 1930, there had been the usual depreciation due to seven or eight

years of wear and tear, its actual value in 1930 certainly did not exceed its original cost to any such extent as was testified to by Gaudynski and his witness. Likewise, it is highly improbable that the actual value in January, 1930, of the other improvements, consisting principally of the house built in 1909 and bought by Stepke in 1919 for a total price of $3,700, including the lot, and improved by him in 1923 and 1924 at a cost of $1,875, could possibly, in January, 1930, have exceeded the sum of $6,000, at which Gaudynski and his witness, Bonin, valued the house. If to those valuations of $1,580 for the garage and $6,000 for all other improvements there are added $3,000 for the lot (which was the highest value placed thereon by Gaudynski or any of his witnesses, and which is probably from $500 to $1,000 in excess of its actual value in January, 1930), the sum total of the maximum probable value is $10,580. That is $1,420 less than an actual value of at least $12,000, required under sec. 231.32 (1) (g), Stats., to warrant the investment of $6,000 of trust funds in an obligation secured by a first mortgage on real estate. Consequently, the finding under review was clearly erroneous, and the court's order, in so far as it relates to that investment, must be reversed, with directions to enter an order which will sustain the objection filed to the allowance of Gaudynski's account and to his final discharge as guardian; and will require him and his surety to pay to the incompetent's estate the sum of $6,000, with the unpaid, accrued interest, in place of the above-mentioned note and mortgage for that amount.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order in accordance with this opinion.