ESTATE OF GEORGE: ESTATE OF GEORGE, Respondent, vs. UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

*November 12—December 8, 1936.*
*April 9—June 21, 1937.*

For the appellant there were briefs by *Lines, Spooner & Quarles* of Milwaukee, attorneys, and *Allan V. Classon* of Green Bay and *Maxwell H. Herriott* of Milwaukee of counsel, and oral argument by *Mr. Herriott.*

For the respondent there were briefs by *Matthew M. Wallrich* and *Wallrich & Aschenbrener,* all of Shawano, and oral argument by *Mr. Wallrich.*

A brief was also filed by *Albert K. Stebbins* and *G. Kenneth Crowell,* both of Milwaukee, as *amici curiæ.*

The following opinion was filed December 8, 1936:

FOWLER, J.    A petition was filed in the county court to require A. F. Wendt, as trustee under the will of D. H. George, to which his bondsman, United States Fidelity & Guaranty Company, was made a party, to account for securities in his hands as trustee.    On final hearing the county court determined that certain securities held by the trustee

were improperly held by him, and certain investments made by him were improperly made, both because not such as required by statute for investment of trust funds. The securities were notes of R. A. Upham for $1,600; thirty shares of bank stock; and certificates of deposit in a bank. The judgment of the court required payment of the original or par value of the securities with interest accumulations, aggregating $8,012.11, to be paid by Wendt and his surety into court, and required assignment of these securities by Wendt to the surety company. The surety of Wendt appeals.

The appellant makes two contentions: (1) That the county court was without jurisdiction to enter judgment against a surety company; and (2) that the securities were properly held by the trustee under the will because the will gave to the testator's widow the power to direct that they be so held and she so directed.

(1) The basis for this contention and the only authority for it cited is a statement in the opinion in *Estate of Thompson*, 212 Wis. 172, 180, 248 N. W. 167, that "it must be held, therefore, that, so far as the judgment determines the liabilities of the sureties *beyond the extent to which such liabilities may be determined by the judgment against the executor*, the judgment should be reversed."

In the instant case there is no judgment against the surety *beyond the extent of the judgment against the trustee.* Moreover, the statement quoted does not relate to the jurisdiction of the court. The practice in that case was as it is here. That practice has been followed in other cases recently before this court. *Estate of Karkowski,* 220 Wis. 45, 264 N. W. 487; *Estate of Wittwer,* 216 Wis. 432, 257 N. W. 626. The objection to jurisdiction seems to be based on the idea of counsel that the usual practice is first to surcharge the trustee's account and then sue the trustee and his bondsman on the bond. We surmise that the usual practice is perhaps as

here. But however this may be, it does not reach the point of jurisdiction of the county court to enter judgment in an accounting proceeding against both the trustee and his bondsman. We perceive no reason why the county court has not jurisdiction to bring in as a party the bondsman of a trustee lawfully appointed by the county court and render judgment against him for the amount for which he is liable in the proceeding for an accounting. Such proceeding is more favorable to the bondsman than the other proceedings suggested. In such proceeding the bondsman has notice of the claims against the trustee and is thus given opportunity to defend on his own account if he desires. In the other proceeding he may have no notice of the first proceeding, and thus have no opportunity to defend, but is nevertheless bound by the judgment against the trustee. *Newcomb v. Ingram,* 211 Wis. 88, 109, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171. No prejudice can possibly result to the bondsman from the practice here followed.

(2) The will of the testator under which the appellant claims his retention of the securities was proper contained a clause directing the trustee to convert all of the testator's property, except his homestead, and except such portion of his property as his wife might desire to have preserved in kind, into interest-bearing securities, and to invest and reinvest all of his property, except as aforesaid, in high-grade interest-bearing securities; and to pay the entire income of his estate, less the expenses of administration, to his wife, Sarah R. George, during her life; and upon her death, to set aside the sum of $10,000 in one fund and hold it for the benefit of a named grandson until he became thirty years of age; and to pay one half the rest to a daughter; and to hold the other one half in trust to pay the income for the support of the testator's son James and his family; and upon the death of both James and his wife, Agnes, to pay it to the

said grandson if he was then thirty years of age and, if not, to hold it in trust for him until he attained that age.

Wendt was not made the original trustee, but was appointed to succeed A. S. Humphrey, who was first appointed and resigned on account of ill health after the death of the testator's wife, Sarah. The wife survived the testator only a little more than a year after her husband's death. The court found that "shortly before her death" the widow "orally directed A. S. Humphrey to keep the property intact until paid by the people who owed it, and then to reinvest the proceeds" and that this direction was communicated by Humphrey to Wendt.

The court concluded that the direction of the widow to hold the funds intact conferred no power or right to the trustee to hold them intact after her death. She might properly for her own benefit during her lifetime so direct, but she could not by such direction freeze the securities in the trustee's hands during the remaining period of the succeeding trusts created by the will, one of which was not to expire until the grandson, nine years old at the testator's death, became thirty years of age, and the other might continue longer. Humphrey held the securities for nearly a year after the widow's death before resigning, but up to this time there had been no depreciation of the securities. They were of value when he received them as trustee as set forth in the inventory of the estate, and were of the same value when he turned them over to Wendt. As the estate was not damaged by Humphrey's failure to convert the securities and invest the proceeds as required by statute, Humphrey and his bondsmen, who were also parties to the petition for accounting, were discharged from liability and properly so. But the court held that Wendt was required as trustee to convert the securities mentioned within one year from the time he received them and reinvest them in statutory securities. This

is in accordance with a generally accepted rule. *Estate of Grotenrath,* 217 Wis. 109, 258 N. W. 453. From March 5, 1930, to the time of hearing in June, 1934, the bank stock had become valueless, the certificates of deposit had become greatly lessened in value through stabilization proceedings of the bank that issued them, and the notes of Upham had become uncollectible. The court held the trustee and his bondsman liable for the value of the securities when Wendt received them with four per cent interest thereon.

. We are of opinion that the trial court was right in holding that the widow had no power to direct the holding of the securities beyond the period of her lifetime, and that it was also correct in requiring Wendt to account for them at their value when he received them.

It is urged that Wendt was only responsible for negligent handling of the securities. But as to the bank stock and notes, the statute itself makes him negligent upon his failure to convert and reinvest them in such securities as the statute requires. *Estate of Fouks,* 213 Wis. 550, 554, 252 N. W. 160; sec. 231.32, Stats. 1933. However, the court's findings sufficiently cover the matter of his negligence. The court expressly found that Wendt "was negligent in the management of this trust, and as a result of such negligence the estate of D. H. George, including the two separate trusts of Dewey George and James F. George and family, have suffered a loss in the sum of $7,704.28 as of February 1, 1936." This statement is in the judgment rather than the findings, but the findings go into detail as to Wendt's conduct respecting the three classes of the securities, and make out a case of negligence as to each. They recite that the notes were collectible at all times during 1931 and up to the middle of 1932, during which period they were in Wendt's hands, and should have been collected during that time; that the certificates of deposit and the bank stock were in a bank of which Wendt was assist-

ant cashier and in the active management; and that the stock of the bank was salable at its face value for more than a year after Wendt received it as trustee. The certificates of deposit ran to Wendt as trustee and were dated November 28, 1931; December 7, 1931; March 9, 1932; March 15, 1932; April 28, 1932; September 15, 1932; and November 15, 1932. The aggregate of their face value is over $4,000. The bank closed February 4, 1933. Wendt as assistant cashier is chargeable with knowledge of its condition. The certificates were not proper subjects of investment under the statute, yet the one first described was held for more than a year. They were payable on presentation, and would have been paid on presentation at any time before the bank closed, and Wendt did not present them. At the date of the later certificates, under Wendt's intimate knowledge of the bank's condition, to deposit funds in the bank even for temporary holding, may well be considered negligent. We consider that the county court was not in error in holding the trustee liable for all these certificates. *In re Filardo,* 221 Wis. 589, 602 *et seq.,* 267 N. W. 312.

*By the Court.*—The judgment of the county court is affirmed.

A motion for a rehearing was granted on February 10, 1937.

The following opinion was filed June 21, 1937:

ROSENBERRY, C. J. (*on rehearing*). Upon the original hearing the judgment of the trial court was affirmed. The United States Fidelity & Guaranty Company, hereinafter referred to as the "Guaranty Company," moved for a rehearing on the ground that the court had no jurisdiction of the subject matter of an action upon the bond of a testamentary trustee. The motion for rehearing was granted, and for the purpose of re-examining the nature and extent of the juris-

diction of the county court, the court directed briefs upon the following question:

"What jurisdiction is conferred upon the county court by the following clause of sec. 253.03, Stats.:

" 'The jurisdiction of the county court shall extend . . . to all matters relating to the settlement of the estates of such deceased persons. . . .'

"(a) Does it confer jurisdiction to enforce liability on the bond in this case?

"(b) Does it confer jurisdiction to bring any action at law if some part or interest of the estate being administered by the county court is involved?

"(c) When is the remedy afforded by the county court not as 'adequate, complete and efficient' as that afforded by the circuit court?"

Very helpful and exhaustive briefs were filed in response to these questions. The facts are stated in the original opinion to which reference is made.

Judgment having been rendered against the Guaranty Company upon the bond, it is the contention of the Guaranty Company on the rehearing that the county court had no jurisdiction of the subject matter of an action on the bond of the testamentary trustee.

A determination of the question presented requires a consideration of the limits of the jurisdiction of county courts. In this determination a consideration of the historical development of the court is helpful.

It appears that in 1839 there was established in the territory of Wisconsin courts of probate by act of the legislative assembly for the territory. The territorial court had jurisdiction to probate wills, grant letters of administration, appoint guardians, examine and allow accounts of executors, administrators, and guardians "and shall have cognizance of all such other matters and things as the laws of this territory do or may direct." See Territorial Stats. 1839, p. 296. See also Laws of Territory of Michigan 1833, p. 297.

Sec. 2, art. VII, Wis. Const., provides:

"The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace. . . ."

Sec. 14, art. VII, after providing for the election of a judge of probate, provides:

". . . Provided, however, that the legislature shall have power to abolish the office of judge of probate in any county, and to confer probate powers upon such inferior courts as may be established in said county."

The first legislature enacted ch. 85, R. S. 1849, establishing courts of probate. The powers of this court were defined in secs. 5 to 8 of that act. The powers conferred were substantially those conferred upon the territorial court.

By sec. 2, ch. 86, R. S. 1849, an inferior court to be known as the county court was created. The county court so created was vested with civil jurisdiction. By secs. 3 and 4 of ch. 86 the duties of a judge of probate were transferred to the county courts as of January 1, 1850. By that act it was provided:

"Sec. 3. Such court [the county court] shall have the powers and jurisdiction now by law conferred on judges of probate, and shall perform all of the duties of judges of probate, in the manner provided by law," etc.

Sec. 4 provided: ". . . and the said judges of the county court, from and after that day, shall be invested with full and exclusive probate powers."

Thus, it appears that the county court at the time of its origin had two kinds of jurisdiction: Jurisdiction in civil matters and in probate matters. In considering the early cases this distinction must be borne in mind.[1]

In the revision of 1858, the provisions of ch. 85, R. S. 1849, appear as the first part of ch. 117, under the title "Of

[1] *Norval v. Rice* (1853), 2 Wis. 17; *Supervisors of Crawford County v. Le Clere* (1851), 3 Pin. 325; *Brunson v. Burnett* (1849), 2 Pin. 185.

county courts." Ch. 86, R. S. 1849, became the last part of ch. 117 under the subtitle "Of county courts having civil jurisdiction." However, the county courts with civil jurisdiction were confined to the counties of Milwaukee, La Crosse, St. Croix, Douglas, and La Pointe. In the revision of 1878, the statutory provisions relating to the probate powers of the county court were set out in ch. 114, entitled "Of county courts." Ch. 115, entitled "Of other courts of record," related to the civil jurisdiction of some of the county courts. This legislative treatment of the county court as a court of probate (ch. 114) and as an inferior court (ch. 115) reappeared in the Wisconsin statutes for 1889 and in the original revision of 1898. See revisor's notes, ch. 115. Ch. 114 of the statutes of 1898 is now ch. 253 of the Wisconsin statutes for 1935. Ch. 115, R. S. 1898, now appears as part of the "Table of all special private and local laws," etc., in the 1930 Annotations and the appendices under the title "County Courts."

Until 1919 all appeals from the county court in probate were taken to the circuit court, where a trial *de novo* with a jury was available in proper cases. In 1919 appeals were authorized to be taken directly from the county court to the supreme court in counties having a population of over fifteen thousand. Provision was made for the summoning of a jury in the county court for the trial of those cases in which the parties would have been entitled to a jury trial upon appeal to the circuit court. Either party in such a case, however, may demand the removal of the controversy to the circuit court. See *State ex rel. Peterson v. Circuit Court* (1922), 177 Wis. 548, 188 N. W. 645; *Will of Weidman* (1926), 189 Wis. 318, 207 N. W. 950.

Although the probate courts derive historically from the ecclesiastical courts of England, their jurisdiction is different and wider, our county courts having jurisdiction in matters in probate formerly exercised by courts of chancery and common law.

With respect to matters in probate, the county court has plenary power in law and equity. *State ex rel. Peterson v. Circuit Court, supra; Shupe v. Jenks* (1928), 195 Wis. 334, 218 N. W. 375; *Wisdom v. Wisdom* (1914), 155 Wis. 434, 145 N. W. 126; *Meyer v. Garthwaite* (1896), 92 Wis. 571, 577, 66 N. W. 704.

It has been held that the county court has jurisdiction over a testamentary trust. *Carpenter v. U. S. Fidelity & Guaranty Co.* (1904) 123 Wis. 209, 101 N. W. 404. However, it is only a trust created by will which vests in the county court any jurisdiction in probate over the trust or the trustee. *Newcomb v. Ingram* (1933), 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171.

In *Estate of Sipchen* (1923), 180 Wis. 504, 508, 193 N. W. 385, the court said:

"The court's jurisdiction of the subject matter is designed primarily for two purposes: First, to enable creditors of the deceased to present their claims for adjudication, so as to enable them to participate in the distribution of the assets; and second, to distribute the remainder of the property in accordance with the provisions of the last will and testament."

County courts have no jurisdiction in probate over actions for the recovery from third parties of assets or moneys belonging to or alleged to be due to the estate except by way of setoff or counterclaim. Sec. 313.05, Stats. *Estate of Kallenbach* (1924), 184 Wis. 171, 175, 199 N. W. 152, where the court said:

"The county court obtained jurisdiction to enforce claims against debtors to the estate by reason of the statutes referred to, and it would seem clear that unless a debtor to an estate filed a claim against the estate, the county court would have no jurisdiction to proceed against the debtor in that court. It could authorize the administrator to begin an action against the debtor in a court of competent jurisdiction."

In this connection it should be noted that "claims against the estate" include claims against the decedent as well as

claims against the estate arising subsequent to the death of the decedent or incidental to administration and also claims against the estate for legacies or distributive shares of intestate estates. See *Estate of Kelly* (1924), 183 Wis. 485, 198 N. W. 280; *Dampier v. St. Paul Trust Co.* (1891) 46 Minn. 526, 49 N. W. 286. In *Payne v. Meisser* (1922), 176 Wis. 432, 187 N. W. 194, it was held that claims which had to be filed to escape the bar of nonclaim were limited to those arising *ex contractu*. See also *In re Brust's Estate* and *Knutsen v. Krook* (1910), 111 Minn. 352, 127 N. W. 11.

It was also held that the word "claim" did not include purely tort actions which should be prosecuted to judgment either in the circuit court or some other court of competent jurisdiction. Having under consideration the statute authorizing a·discovery proceeding in the county court, this court said :

"But if property is discovered, there is no remedy to enforce its delivery or restoration to the estate. *Saddington's Estate v. Hewitt* (1887), 70 Wis. 240. After its discovery another action must be brought for its recovery, in a court of general jurisdiction, either at law or in equity, as the exigency of the case may require." *Meyer v. Garthwaite, supra.* See also *Eisentraut v. Cornelius* (1908), 134 Wis. 532, 115 N. W. 142; *Estate of Schaefer* (1926), 189 Wis. 395, 207 N. W. 690; *Estate of Kallenbach, supra.*

In a case where the county court had jurisdiction of two estates, and a controversy arose between the administrators, it was held that the county court had no jurisdiction to try the title to the disputed property. *Estate of Kräuss* (1933), 212 Wis. 561, 250 N. W. 388.

Sec. 287.06, Stats., authorizes an executor or administrator to prosecute an action for the recovery of any claim or cause of action which survived. Obviously, this statute refers to an action to be prosecuted by the executor or administrator in a court of general jurisdiction. See *Payne v. Meisser, supra.* It has always been held that a county court is a court

of limited jurisdiction, and has only such jurisdiction as is conferred upon it by statute. *In re Kallenbach's Estate* (1924), 184 Wis. 171, 199 N. W. 152; *Newcomb v. Ingram* (1933), 211 Wis. 88, 243 N. W. 209, 245 N. W. 121, 248 N. W. 171.

Sec. 253.03, Stats., provides:

"The jurisdiction of the county court shall extend . . . to all matters relating to the settlement of the estates of such deceased persons. . . ."

Is an action on a surety bond given under the circumstances of this case a matter relating to the settlement of the estate of D. H. George? While the matter was not considered at length, it was expressly held that it is not a matter relating to the settlement of the estate in *Estate of Thompson* (1933), 212 Wis. 172, 248 N. W. 167, a case in many respects much like the case now under consideration. See also *Saddington's Estate v. Hewitt* (1887), 70 Wis. 240, 35 N. W. 552. In a suit upon the bond given by an administrator, executor, or trustee the subject matter of the action is the liability of the surety. That is not a matter which relates to the settlement of the estate, no more than is an action to recover against a third party upon a claim belonging to the estate, or an action in replevin to recover property in the hands of a third party belonging to the estate.

The jurisdiction of the county court in probate is limited in the respects under consideration to those matters which are incidental to its probate jurisdiction. Merely because the estate of a decedent has interests of various kinds, that fact does not operate to extend the jurisdiction of that court to cases involving all of those interests. When, however, it has once acquired jurisdiction in probate, as, for instance, of the administration of a testamentary trust, it then has very wide powers, all of the powers of a court of chancery.

Therefore, in determining whether or not in a particular case the county court has jurisdiction of probate matters, consideration must always be given to its function which is, as has been said by this court, to administer and distribute estates and exercise such other powers as may be expressly conferred upon it by the legislature.

There are no doubt sound reasons of public policy why the legislature has not further extended the jurisdiction of the county court to matters involving a jury trial. While, as already stated, the legislature in 1919 authorized the summoning of a jury for the ordinary county court, this involves a considerable expense and delay, and such matters can usually be much more expeditiously and effectively litigated in a court of general jurisdiction. In this case it is held that the county court of Shawano county had no jurisdiction of the subject matter of an action against the Guaranty Company, and therefore no jurisdiction to enter judgment against it upon the bond.

No question of practice or pleading is involved here because if the petition had been so amended as to make the Guaranty Company a party, the county court would. have had no jurisdiction to render judgment against the surety. It is a well-established maxim in the law that parties cannot confer jurisdiction upon courts in cases where the court has no jurisdiction of the subject matter.

To what extent the surety is bound by the accounting is a matter not now in controversy. It is considered that this is not an appropriate time or place to consider when a remedy afforded by the county court is as adequate, complete, and efficient as that afforded by the circuit court. A consideration of that matter requires an examination into the equity powers of the county court in probate, a matter which is not before the court at this time.

*By the Court.*—The mandate of this court is hereby vacated and set aside. In lieu thereof the mandate is that the judgment of the county court is modified by substituting in paragraph III thereof the word "defendant" for the word "defendants;" by striking from said paragraph the words "and the United States Fidelity & Guaranty Company;" and by striking from paragraph V thereof the words "and the United States Fidelity & Guaranty Company;" and, as so modified, the judgment is affirmed.