Laabs and another, Appellants, vs. City of Milwaukee and others, Respondents.

*September 10—December 3, 1940.*

194

For the appellants there were briefs by *Tibbs & Tibbs* and *P. F. Leuch,* all of Milwaukee, and oral argument by *Mr. Brooke Tibbs* and *Mr. Leuch.*

For the respondents there were briefs by *Walter J. Mattison,* city attorney, *Omar T. McMahon* and *Arthur L. Rysticken,* assistant city attorneys, attorneys for the city of Milwaukee, Roland E. Stoelting, and W. H. Wendt, and by *Burns, Mehigan & Schoen* of Milwaukee and *Albert W. Grady* of Port Washington, attorneys for Martha Basken, and oral argument by *Mr. McMahon, Mr. Rysticken,* and *Mr. Irving P. Mehigan.*

The following opinion was filed October 8, 1940:

FRITZ, J.   On this appeal it suffices to note the following facts, which were found by the court upon proof that was virtually undisputed.   Pursuant to an advertisement duly published by the city of Milwaukee, requesting the submission to its commissioner of public works of sealed proposals by April 11, 1939, for the performance of a contract for

the furnishing of the equipment, and the doing of the work required for the collection and disposal of dead animals, etc., found in or ordered to be removed from the city during a five-year period in accordance with sec. 862.2 of the city code, the plaintiff, William Laabs, and the defendant, Martha Basken, administratrix of the estate of August Basken, deceased, submitted proposals to do the work for $3,600 and $3,500 a year, respectively. August Basken was the owner of a rendering plant with equipment suitable for the performance of the work under the contract, and upon his death on March 19, 1939, the operation of the business in Ozaukee county was continued as a going concern by his widow, Martha Basken, and their oldest son, as manager, both of whom had assisted therein during his lifetime. Martha Basken was appointed by the county court of Ozaukee county as special administratrix on March 20, 1939, and as general administratrix on May 2, 1939, and she duly qualified as such. The county court records show the estate to be solvent. On April 24, 1939, the commissioner of public works, Roland E. Stoelting, sent a report of the proposals to the city's common council, with an attached letter signed by Charles L. Senn, assistant chief of the sanitation division of the city's health department; and also a letter signed by Dr. John P. Koehler, as commissioner of health of the city. Senn stated in his letter that the existing sewage disposal system in the Basken rendering plant was not satisfactory and made three recommendations, which, if carried out, were believed to make the Basken plant reasonably satisfactory. Koehler stated in his letter,—

"I do not know how long it will take to carry out Mr. Senn's recommendations, but when such improvements are completed, I would consider the Basken rendering plant eligible to enter into a contract with the city of Milwaukee for the disposal of dead animals."

Stoelting stated in his report,—

"It is my judgment that the lowest bidder, Martha Basken, executrix of the estate of August Basken, is incompetent and unreliable for the performance of the work for which she bid, the said estate of August Basken not being in possession of a rendering plant which at this time meets the requirements of the health department. . . . The next lowest bidder is Mr. William Laabs, and I hereby recommend to your honorable body to accept the bid of Mr. William Laabs as being the lowest, competent and reliable bidder for such work."

The council referred Stoelting's report to its committee on finance-printing, which held meetings from time to time pending further investigation. On May 1, 1939, Senn reinspected the Basken plant and reported to his superior that "the sewage-disposal system has been improved, so that it is now believed to be satisfactory;" and that "if the Basken rendering plant is maintained and operated in its present condition, no nuisance will be created; that by providing an extra lock on the rear door of the truck, and by painting the inside, the truck will be satisfactory for use in the city of Milwaukee." Koehler transmitted this report to Stoelting, who took it to the council's committee on finance-printing. He also sent Paul Johannig, an engineer in his department, to inspect the Basken and Laabs plants with a delegation of aldermen, and the engineer reported orally to Stoelting. On June 5, 1939, the council, on a report by a majority of its committee on finance-printing, recommending that the contract be awarded to the lowest bidder (Basken estate), adopted a resolution to that effect, which was approved by the mayor. By an order entered June 8, 1939, the county court of Ozaukee county authorized Martha Basken, as administratrix of the August Basken estate, to enter into the contract. On July 6, 1939, the contract was entered into between Martha Basken, as such

administratrix, as the first party, a surety company as the second party, and the city of Milwaukee as the third party, and it was executed on behalf of the city by Stoelting as commissioner of public works and by the city comptroller. Martha Basken, as such administratrix, began performing the work pursuant to the contract on July 10, 1939.

The plaintiffs' principal contention is that the award of the contract by the council to Martha Basken, as administratrix, was void because of the failure to properly comply with certain provisions in the city charter and its code, to wit:—a provision in sec. 862.2 of the code, which required the commissioner of public works to advertise every five years for sealed proposals for the collection and disposal of dead animals, etc., and upon receiving the proposals to enter into a contract with the lowest responsible bidder for the work; and the provisions in the charter (sec. 7.17) that city contracts are to be entered into "in the manner and under the limitations prescribed by the laws of this state or the charter;" (sec. 7.29) that all work over $200 "shall" be let by advertisement to the lowest bidder, as provided by certain charter provisions including sec. 7.23; and (sec. 7.23) that,—

"whenever any bidder shall be, in the judgment of said commissioner (of public works), incompetent, or otherwise unreliable for the performance of the work for which he bids, the said commissioner shall report to the common council of said city a schedule of all the bids for such work, with a recommendation to accept the bid of the lowest competent and reliable bidder for such work, with its reasons for such recommendation, and thereupon it shall be lawful for the said common council to direct said commissioner either to let the work to such lowest competent and reliable bidder, or to relet the same anew."

Plaintiffs claim that under these charter provisions the council, after receiving Stoelting's report of April 24, 1939,

was authorized to do only one of two things, *i. e.*, (a) to direct the commissioner of public works to let the work to Laabs (as the "lowest competent and reliable bidder"), or (b) "to relet the same anew." In that connection plaintiffs argue that after Stoelting's recommendation had been made pursuant to the charter, there was really only one "bidder," William Laabs, and he was the only one to whom the council could let the contract; that either he was to be awarded the contract or there had to be a new advertisement, and that, consequently, when the council directed the commissioner to let the contract to the Basken estate, it clearly exceeded its charter power.

In passing upon these contentions and arguments by plaintiffs, the learned circuit judge filed a written decision in which he concluded that it appears to be plainly shown by Stoelting's conduct, as indicated by the facts stated above, that his expression of his judgment that Basken (the lowest bidder) was incompetent and unreliable was in effect withdrawn prior to action by the council; that there is no showing in the evidence that when Stoelting personally delivered the second report by Senn with Koehler's second letter to the committee of the council that Stoelting had then any further objection on the ground of incompetency or unreliability; that in fact he testified in effect that when he signed the contract he was of the opinion that the Basken plant would meet all requirements, and his submission of the second Senn report after the latter's reinspection, his delegation of Johannig to investigate both plants, coupled with his failure to make any protest notwithstanding the fact that Senn's report—and later the committee's report— were favorable to the Basken plant, indicates that the commissioner's "judgment" must have changed; that the court will not assume that the commissioner, after the events and conduct as recited, adhered to a "judgment" where the reason for it had disappeared; that "There was thus a sub-

stantial compliance with the essentials of the law. To hold otherwise seems hypercritical and substituting form for substance. There is here no suggestion of 'dickering' about the terms of the contract. There is but the recognition of the dominating principle that the lowest bidder should be awarded the contract if such bidder is competent and reliable;" and that "Of course the provision in the charter (sec. 7.23) in effect requiring the award of the contract to be made to a 'competent and reliable bidder' must likewise be complied with. But here the objection was directed merely to certain defects of the equipment, concerning which Sanitary Inspector Senn (on whose report solely the commissioner acted) recommended changes. With the changes made as recommended prior to the making of the contract to 'meet the requirements of the health department' there could be no question as to Mrs. Basken's competency and reliability; and the reason for Mr. Stoelting's original objection disappeared."

These conclusions and the court's decision were well warranted under the undisputed facts in respect to the acts and conduct of the commissioner, the common council, and the other city officials, and the ordinances, charter provisions, and general law applicable thereto. As Martha Basken, as administratrix, offered a proposal which was the lowest bid, it would have entitled her to the award of the contract but for Stoelting's report of April 24, 1939, which he based on the accompanying recommendations by Senn as to three stated changes in the Basken plant, which, if made, Senn as well as Koehler stated would make the plant reasonably satisfactory. It is true that under sec. 7.23, city charter, the council, upon receiving Stoelting's report, was authorized and lawfully could then have directed Stoelting either to let the work to the lowest bidder, whom he recommended as competent and reliable, i. e., Laabs, or to relet the work anew; and that action by the council in but one or the other

of these alternative manners is all that it could have taken if it had immediately rejected Martha Basken's lowest bid. But this charter provision, in providing that it shall be "lawful for the council" to direct the commissioner to proceed in one or the other manner does not necessarily make it mandatory for the council to proceed in but one or the other of these manners when, as in the case at bar, the commissioner, in reporting, states reasons or suggests changes which did not relate to the specifications or the work to be performed under the proposed contract, but were merely in relation to conditions in the lowest bidder's plant or equipment, which could be and were promptly changed and remedied. As neither the charter or ordinances, nor the official notice inviting proposals or the specifications prescribing the work to be done under the contract, required the bidder's plant or equipment to be in a satisfactory condition at the time of filing bids, it would seem within the council's legislative and *quasi*-judicial discretion and judgment to consider it sufficient if the plant and equipment was made satisfactory for proper performance under the contract prior to the awarding thereof by the council. That was done satisfactorily and so reported by Senn in the letter which Stoelting delivered to the council's committee before it recommended the award of the contract to' the lowest bidder, and the council adopted the resolution authorizing the commissioner to award the contract to the lowest bidder (Basken estate). As conditions in the plant and equipment had been remedied in accordance with Senn's recommendations and evidently to the satisfaction of Stoelting, the court was warranted in finding that "at the time of the award of said contract by the common council to the said Martha Basken, as such administratrix, she, and the said estate, was the lowest bidder, and a competent and reliable bidder;" and that in thereupon awarding the contract to her there was, as the court said, "but the recognition of the dominating

principle that the lowest bidder should be awarded the contract if such bidder is competent and reliable."

In doing that neither the council nor the commissioner violated the rule that,—

"The law permits no private negotiations with an individual bidder, no change of plans and specifications submitted for the competition, no variances for the purpose of obtaining a change in the bid of one or more bidders. The whole matter is to be conducted with as much fairness, certainty, publicity, and absolute impartiality as any proceeding requiring the exercise of *quasi*-judicial authority." *Chippewa Bridge Co. v. Durand*, 122 Wis. 85, 99, 99 N. W. 603.

On the contrary, there was substantial compliance in every respect stated in that decision to be necessary to render valid the letting of a public contract, to wit:

"First in order is the one requiring the work to be let to the lowest reasonable and responsible bidder." (p. 97)
"A second essential contained in the charter is that the plans and specifications and terms, submitted as a'basis for the bids, shall not be changed except in such manner as to affect all bidders and persons desiring to bid alike. . . ." (p. 98)
"A third essential of the charter is that all bids shall be sent to the city council under seal. That implies that the bids are to be opened in the presence of the council, and all so treated at the same time and when they are taken up for consideration, thus in a measure precluding publicity as to the contents of the respective bids and opportunity for collusion between bidders, and negotiations between members of the council and bidders." (p. 100)
"A fourth essential of the charter is that each bid shall be accompanied with a bond as before indicated." (p. 100)

Plaintiffs also contend that the county court of Ozaukee county had no power to authorize Martha Basken, as administratrix, to enter into the contract. Whether and if so under what circumstances an administrator of the estate

of a decedent can be authorized by a probate court order to continue to operate a business enterprise in which the deceased was engaged when he died are matters as to which there is a conflict in the authorities. 21 Am. Jur. p. 518, § 255. However, while Martha Basken was in charge of the estate as special administratrix, the county court was empowered by sec. 311.07, Stats., to authorize her to "do such other things as the court shall direct and as may be deemed for the interests of the estate, and preserve all the property of the deceased for the executor or administrator who may afterward be appointed." And after Martha Basken was appointed administratrix there was applicable the rule that, "While the county courts derive their powers from the statutes, they have plenary jurisdiction in all matters of administration, settlement, and distribution of estates of decedents, and their jurisdiction is in considerable part concurrent with that of courts of equity." *Will of Robinson*, 218 Wis. 596, 603, 261 N. W. 725; *Estate of George*, 225 Wis. 251, 261, 270 N. W. 538, 274 N. W. 294. In so far as the court, in the exercise of this jurisdiction, determined upon hearings in administering the estate of August Basken that the estate was solvent; that the rendering business was one of its principal assets; and that the administratrix and the deceased's oldest son, who had assisted him in the business, were able to continue to conduct the business profitably as a going concern, and that therefore it was necessary and proper to order the administratrix to enter into the contract with the city, the court's order is not subject to collateral attack by the plaintiffs herein, who are neither creditors nor heirs of the estate. As we said in *Ottstadt v. Jardine*, 229 Wis. 85, 87, 281 N. W. 644,—

"If the court acquired jurisdiction the order would not be void even if erroneously entered. Certainly it would not be open to collateral attack. The jurisdiction of the county court extends to the administration of estates and to all

matters relating to the settlement of such estates." *Roberts v. Weadock,* 98 Wis. 400, 405, 74 N. W. 93; *Jackson v. Astor,* 1 Pin. 137, 158. See also 1 Freeman, Judgments (5th ed.), § 395.

Plaintiffs contend further that the city of Milwaukee could not make a valid contract with the administratrix for the performance of the work in question, but cite no precedent or authority in support of their contention. Plaintiffs argue that the city cannot properly let municipal work to any decedent's estate, because the charter and ordinances authorizing contracts therefor use only the phrase "person, firm or corporation;" and that such work as is to be performed under the contract could not be let by the city to the estate in question. The mere fact that the representative of the estate of a decedent is not expressly mentioned in connection with the phrase "person, firm or corporation" when used in the charter and ordinances authorizing contracts for municipal work does not necessitate giving the terms used such a narrow construction as to render ineligible as a contractor the representative of a solvent estate which, although in the process of administration, can furnish the bond required of bidders and contractors for municipal work, and in the assets of which there is included a going business and plant which it is expedient to continue as a going concern until the distribution of the assets to the heirs of the deceased. Likewise, there does not seem to be any sound reason for denying to the representative of such an estate and the heirs interested therein the privilege of entering into a contract which is to be performed in continuing the deceased's business as a going concern by heirs who are competent to do so, and who can furnish the bond required by the city to assure performance, and which, as drawn in ·this case by the city, has a provision expressly relating to the assignment or subletting thereof with the written consent of the surety or the substitution of a new surety.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.

The following memorandum was filed December 3, 1940:

FRITZ, J. (*on motion for rehearing*). The matters presented on plaintiffs' motion do not warrant a rehearing. In so far as material, all were taken into consideration in deciding this case, including the decision in *Bechthold v. Wauwatosa,* 228 Wis. 544, 277 N. W. 657, 280 N. W. 320. In that case the contract was held invalid because of the failure to comply with certain charter provisions which prohibited the letting of a contract unless certain acts in proceedings leading up to such letting were performed in the manner prescribed by such provisions. That case was not considered applicable because under the facts involved herein there was due compliance with all essential requirements prescribed in respect to the proceedings leading up to the letting of a contract by the charter provisions, as construed in the opinion.

*By the Court.*—The motion for a rehearing is denied, with $25 costs.